610 So.2d 581 (1992)
James JOHNSON, Appellant,
v.
STATE of Florida, Appellee.
No. 91-2922.
District Court of Appeal of Florida, First District.
December 10, 1992.
Rehearing Denied February 1, 1993.
*582 Nancy A. Daniels, Public Defender, Nada M. Carey, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., Amelia L. Beisner, Asst. Atty. Gen., Tallahassee, for appellee.
SHIVERS, Judge.
Appellant pled nolo contendere to possession of cocaine and possession of a concealed weapon by a convicted felon, specifically reserving the right to take this appeal from the denial of his motion to suppress. The facts of this case compel us to reverse the order denying the motion to suppress, because the police officer lacked a founded suspicion of criminal activity or probable cause to believe Appellant was armed. The subsequent patdown and warrantless search were invalid as a result of the illegal detention, and the evidence obtained should have been suppressed. Baggett v. State, 531 So.2d 1028 (Fla. 1st DCA 1988).
On July 3, 1991, Officer Bates was patrolling an inner-city section of Jacksonville known as a high drug area. He had been told to go out and look for drug activity. About 7:30 P.M., the officer observed Appellant standing in front of a house at an intersection where the police had made numerous prior drug arrests. However, the Sheriff's Department had received no complaints on that day about drug-related activities there. Officer Bates saw Appellant talking to another man, who was on a bicycle. The officer did not see either individual hand anything to the other. As soon as he saw the approaching patrol car, the man on the bicycle hurriedly rode away.
The officer was about 30 feet away and saw what appeared to be cash wadded in Appellant's hand and an object in the other. Bates testified that Appellant quickly stuck "a small round object" in his right pants pocket as the officer approached, but Bates could not see what the object was and did not know whether it was a weapon. Based on his police experience, Officer Bates concluded that a drug transaction had occurred. At the suppression hearing, he said drugs, knives and guns are "very common," and in a situation where a drug deal *583 is suspected, for safety reasons he approaches a suspect as if the person is armed.
Bates could not recall the exact details of what followed, and he relied on his prior deposition testimony indicating he had told Appellant to remove his hands from his pockets and to turn around so the officer could get a good look at him. Prior to instructing Appellant to turn around, the officer had seen no bulges or anything else that looked like a weapon. However, when Appellant turned around, Bates saw a long, narrow closed object, about six inches long, that created a diagonal bulge in the rear pants pocket and appeared to be a pocket knife. The officer removed "a razor type knife" from Appellant's pocket and performed a patdown. Appellant was arrested for carrying a concealed weapon and then was searched, revealing a small plastic container with three pieces of crack cocaine in the right front pants pocket.
Appellant contended the officer lacked a lawful reason to perform an investigatory stop and to detain him. We agree. For purposes of the Fourth Amendment to the United States Constitution, a "seizure" occurs when one's freedom of movement has been restrained, either by physical force or a showing of authority, so that the surrounding circumstances demonstrate a reasonable person would not have felt free to leave. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); J.C.W. v. State, 545 So.2d 306, 307 (1st DCA), rev. den., 553 So.2d 1165 (Fla. 1989); Evans v. State, 546 So.2d 1125 (Fla. 3d DCA 1989) (cocaine should have been suppressed because of invalid seizure resulting from officer's asking defendant to remove hands from pockets). Appellant was seized, as Officer Bates' order for Appellant to take his hands out of his pockets and to turn around was a directive that Appellant was not free to disregard. See Dees v. State, 564 So.2d 1166, 1168 (Fla. 1st DCA 1990).
To justify such a seizure, a law enforcement officer must have a founded suspicion of criminal activity. Section 901.151, Florida Statutes (1989); Terry. A founded suspicion requires a "factual basis in the circumstances observed by the officer." Gipson v. State, 537 So.2d 1080, 1081 (Fla. 1st DCA 1989). We must focus on the reasonableness of the stop. Steele v. State, 561 So.2d 638, 642 (Fla. 1st DCA 1990). Appellant was in his own neighborhood, albeit a high-crime area, talking to another person when the police arrived. Officer Bates saw no weapon and articulated no reason initially to believe Appellant was carrying a weapon. Although he saw what appeared to be cash in Appellant's hand, the officer observed no exchange of any kind between the two individuals. In Curry v. State, 532 So.2d 1316, 1317-18 (Fla. 1st DCA 1988), we stated that the officer's assessment of the circumstances in their totality "must raise a suspicion that the particular individual being stopped is engaged in wrongdoing." These facts are insufficient to provide the requisite founded suspicion for an investigatory stop and detention.
First, the flight of the unidentified bicyclist from an approaching officer, even in a crime area, does not of itself give rise to a founded suspicion of criminal activity and does not justify a stop and frisk, Daniels v. State, 543 So.2d 363, 365 (Fla. 1st DCA 1989), especially where the person is detained as a result of a companion's flight. Smith v. State, 592 So.2d 1239, 1240 (Fla. 2d DCA 1992).
Second, a quick movement as if to conceal something is a legally insufficient reason to justify an investigatory stop. Gipson, 537 So.2d at 1082; Ruddack v. State, 537 So.2d 701 (Fla. 4th DCA 1989); Walker v. State, 514 So.2d 1149, 1150 (Fla. 2d DCA 1987). Appellant's placing his hand in his pocket, without more, did not justify the stop, Dees, 564 So.2d at 1168, even though the neighborhood was known to have a high crime rate. J.D. v. State, 568 So.2d 99 (Fla. 3d DCA 1990); Jenkins v. State, 524 So.2d 1108 (Fla. 3d DCA 1988). Cf. State v. Anderson, 591 So.2d 611 (Fla. 1992) (undercover officers saw series of hand transactions apparently distributing something among pedestrians and drivers, and defendant threw an object into *584 a nearby planter and engaged in other furtive, suspicious acts upon seeing police).
Third, Officer Bates testified he knew Appellant and had stopped him on numerous occasions in the past associating with other people linked to drugs, and he believed he had arrested him on drug-related charges. On cross-examination, however, Bates acknowledged that without reviewing the arrest record he could not ascertain whether or not he had arrested Appellant before. He had observed Appellant exiting crack houses and abandoned buildings in areas known for drugs. Bates admitted that in a deposition he had said he had never seen Appellant involved in criminal activity and had never had any problems with him. Although Bates knew Appellant had a prior drug problem, under these circumstances that fact did not raise a mere hunch to the level of founded suspicion. See Smith v. State, 592 So.2d 1206, 1207-08 (Fla. 2d DCA 1992); Shackelford v. State, 579 So.2d 306 (Fla. 2d DCA 1991); Mosley v. State, 519 So.2d 58 (Fla. 2d DCA 1988) (reversing denial of suppression order where appellant clenched fists in nonthreatening manner and was accompanying purported drug dealer in high-crime area).
Finally, simply having cash in his hand did not create a founded suspicion of criminal activity sufficient to warrant detention, as the officer observed no exchange of drugs, money, or anything else. See Bush v. State, 594 So.2d 793 (Fla. 3d DCA 1992); Bolinger v. State, 576 So.2d 875 (Fla. 2d DCA 1991); Dames v. State, 566 So.2d 51 (Fla. 1st DCA 1990); Peabody v. State, 556 So.2d 826 (Fla. 2d DCA 1990); Gipson. Cf. Winters v. State, 578 So.2d 5, 6 (2d DCA), rev. den., 589 So.2d 292 (Fla. 1991) (temporary detention justified because officer saw defendant lean into vehicle and accept money from driver); Blanding v. State, 446 So.2d 1135 (Fla. 3d DCA 1984) (rapid succession of transactions involving exchange of cash and unseen item in plastic bag).
The initial stop cannot be justified by Officer Bates' observation, after the illegal detention, of a bulge in the rear pants pocket. Daniels. Section 901.151(5), Florida Statutes (1989), provides that if the officer has probable cause to believe the detainee is armed with a dangerous weapon, a search can be conducted to the extent necessary to disclose the presence of the weapon. Johnson v. State, 547 So.2d 699, 701 (Fla. 1st DCA 1989). The officer testified he conducted the patdown as a matter of routine police procedure, not because he could articulate any specific reason to believe Appellant was armed. As in Daniels, the officer would have had no reason to fear for his own safety had he not impermissibly stopped Appellant in the first place. Id., 543 So.2d at 366. The timing of the officer's conclusions is significant here, and "the attempt to bootstrap the justification for the stop" based on Officer Bates' belated suspicion that Appellant was armed does not comport with stop and frisk law. Daniels, 543 So.2d at 366. Cf. Williams v. State, 492 So.2d 1051, 1054 (Fla. 1986), in which the conviction was affirmed where officers, observing a bulge under the defendant's clothing as he was informing them he was on parole for armed robbery, formulated a reasonable suspicion to believe the suspect was armed. They discovered a loaded pistol during the subsequent lawful patdown.
Because the evidence against Appellant was obtained pursuant to an illegal search and seizure, the Fourth Amendment requires a reversal of the trial court's denial of the motion to suppress. Fla. Const. art. I, § 12.
REVERSED.
WEBSTER, J., concurs.
BOOTH, J., dissents with opinion.
BOOTH, Judge, dissenting.
Officer Bates testified he saw appellant place a small, round object in his pocket, as part of what, based on the officer's experience and knowledge, was the culmination of a drug transaction between appellant and a man on a bicycle. The trial court ruled that the officer had a founded suspicion that a crime had taken place. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d *585 889 (1968). The subsequent pat-down search, which revealed cocaine and a concealed weapon, was proper. We should uphold the trial court's decision on the motion to suppress and affirm the judgment of conviction.