652 So.2d 917 (1995)
Jason WADDELL, Appellant,
v.
STATE of Florida, Appellee.
No. 93-3500.
District Court of Appeal of Florida, Fourth District.
March 29, 1995.
Richard L. Jorandby, Public Defender and Karen E. Ehrlich, Asst. Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Atty. Gen., Tallahassee and Edward L. Giles, Asst. Atty. Gen., West Palm Beach, for appellee.
PER CURIAM.
Jason Waddell appeals from a final judgment and sentence entered pursuant to a plea of no contest to the charges of possession of cocaine and driving with a suspended license, specifically reserving his right to appeal. We reverse as the trial court erred in denying Waddell's motion to suppress.
Deputy Grass of the Indian River Sheriff's Department, testified at the hearing on the motion to suppress. He first detailed his prior experience which consisted of 2 1/2 years as an employee with the sheriff's department. He received basic training with no specialized training in narcotics sales, although as a uniformed officer he had observed too many narcotics sales to count and was involved in two reverse stings. He added that the sheriff's office had previously performed reverse *918 stings in the same area that Deputy Grass encountered Waddell, and that narcotics transactions had taken place on the specific street where he encountered him.
As to the specific incident leading to the arrest of Waddell, Deputy Grass testified that on July 25, 1993, at about 8:25 p.m. he was in his patrol car when he saw two young African-American males running from an abandoned convenience store to an open field and towards 8th Court Southwest. Deputy Grass testified that drug sales usually occur between 5:00 p.m. and 8:00 p.m. and then usually taper off until 11:00 p.m. After seeing the two African-American males running, Deputy Grass testified that in accordance with his past experience he believed a drug sale was going down so he continued eastbound. As he approached 8th Court he observed a black Ford pickup truck on a dirt road about 50 yards south of Oslo and where the deputy was located. He testified that he observed that the race of the driver was white as he saw a white arm hanging out the truck window. Deputy Grass further provided that African-American males running up to a white driver was consistent with drug sales.
Deputy Grass admitted that he did not specifically observe any exchange. From his location he testified that he only saw arms going in and out of the truck. After observing the two African-American males briefly at the vehicle, Deputy Grass saw them turn and walk away. He testified that one began running because apparently he had seen him, and the other was fumbling with what appeared to be money placing it in his pocket. Deputy Grass was not positive that he saw money exchanged but thought it was a green material.
Deputy Grass pulled his truck into a position from where he could block the pickup when it exited the street. He approached the driver's side window of the truck and did a driver's license check on Waddell who was the driver of the vehicle, finding out that his license had been suspended six times. During a search of the vehicle incident to arrest on the suspended license charge, Deputy Grass found two rocks of cocaine.
We hold that the trial court erred in denying Waddell's motion to suppress, as the facts recounted above do not evince a founded suspicion on the part of Deputy Grass to justify a stop of Waddell. See State v. Stevens, 354 So.2d 1244 (Fla. 4th DCA 1978) (a "founded suspicion" for the purposes of the stop and frisk law is a suspicion which has some factual foundation in the circumstances observed by the officer, when those circumstances are interpreted in light of the officer's knowledge, mere or bare suspicion cannot support detention). The facts as testified to by Officer Grass amount to a mere suspicion at best since Deputy Grass, although familiar with the area, did not know the two African-American males he observed on foot, and only saw Waddell's arm when he was in the truck. In addition, Deputy Grass did not observe an exchange but only saw arms moving and what appeared to be money. See Messer v. State, 609 So.2d 164 (Fla. 2d DCA 1992) (no founded suspicion for detention where the officer saw the defendant in his pickup truck engaged in a typical "drive-by" cocaine transaction with someone who approached the truck and the officer could see arm movement, but significantly did not see any object actually transferred); Huntley v. State, 575 So.2d 285 (Fla. 5th DCA 1991) (picking up something from the hand of another person and exchanging a piece of paper that might have been money in a very high drug area was equally consistent with noncriminal activity as it was a drug transaction and did not give rise to a founded suspicion); Johnson v. State, 610 So.2d 581 (Fla. 1st DCA 1992), rev. denied, 623 So.2d 495 (Fla. 1993) (no founded suspicion where an officer in a high drug area saw what appeared to be cash in one hand and a small round object in the other but did not see an exchange of drugs, money or anything else between the persons involved).
The fact that the deputy saw two African-American males approach a vehicle driven by a white male does not give rise to a founded suspicion either. See State v. Hoover, 520 So.2d 696 (Fla. 4th DCA 1988) (no founded suspicion where the officer did not see drugs or money exchange hands but thought a drug deal had occurred because a black male was talking to and leaning up *919 against the car of a white man in a predominately black, high drug area). The fact that Deputy Grass saw the African-American males running to the truck or the fact that one ran when he saw the deputy does not support a founded suspicion either. See Johnson, 610 So.2d at 583 (flight of bicyclist even in high crime area does not of itself give rise to founded suspicion of criminal activity and justify stop and frisk, especially where a person is detained as a result of a companion's flight). Since Deputy Grass's observance of two African-American males that he did not know, approaching a truck driven by a white male, without witnessing an exchange of money or drugs does not amount to a founded suspicion, we hold that the trial court erred by denying Waddell's motion to suppress. Accordingly, we reverse Waddell's conviction and resulting sentence.
STONE, POLEN and KLEIN, JJ., concur.